IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

WILLIAM S. CARNEY                                                PLAINTIFF

V.                              NO. 13-2185

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration          DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, William S. Carney, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claim for a period of disability and disability insurance benefits

(DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the

Court must determine whether there is substantial evidence in the administrative record to

support the Commissioner's decision. See 42 U.S.C. § 405(g).

## I.     Procedural Background:

Plaintiff filed his current application for DIB on January 23, 2012, alleging an inability

to work since October 1, 2011, due to chronic obstructive pulmonary disease (COPD),

emphysema, bad right knee, social anxiety, depression, and bad feet. (Tr. 113-114, 155, 159).

An administrative hearing was held on November 2, 2012, at which Plaintiff appeared with

counsel and testified. (Tr. 29-60).

By written decision dated June 12, 2013, the ALJ found that since October 1, 2011,

Plaintiff had an impairment or combination of impairments that were severe - COPD, back

disorder, and anxiety. (Tr. 13). However, after reviewing all of the evidence presented, the ALJ

-1-

determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13-14). The ALJ found that since October 1, 2011, Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb, balance, crawl, kneel, stoop, and crouch; the claimant must avoid concentrated exposure to pulmonary irritants; the claimant can understand, remember, and carry out, simple, routine, and repetitive tasks, can respond to usual work situations and routine work changes, can respond to supervision that is simple, direct, and concrete, and the claimant can occasionally interact with supervisors, co-workers, and the general public.

(Tr. 14-15). With the help of the vocational expert (VE), the ALJ determined that since October 11, 2011, Plaintiff was unable to perform any past relevant work, but that there were other jobs Plaintiff would be able to perform, such as machine tenders (compression molding machine tender, riveting machine operator II, and bindery machine tender/offbearer); production and assembly workers (toy assembler, bottling line attendant, and conveyor line bakery worker); and inspectors, testers, sorters, & weighers (handbag frame inspector, glove pairer, and shoe sorter). (Tr. 20-21).

The ALJ also found that on April 22, 2013, Plaintiff's age category changed to an individual of advanced age, and considering Plaintiff's age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 22). Accordingly, the ALJ found that although Plaintiff was not disabled prior to April 22, 2013, he became disabled on that date and continued to be disabled through the date of his decision. (Tr. 22). The ALJ also found that Plaintiff's substance use disorder(s)

-2-

was not a contributing factor material to the determination of disability. (Tr. 22).

Plaintiff then requested a review of the partially favorable decision by the Appeals Council, which denied that request on July 17, 2013. (Tr. 1-3).  Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 16, 17).

## II.    Evidence Presented:

Plaintiff was born in 1958 and completed high school. (Tr. 155, 160). At the time Plaintiff filed his application, he was working part-time at a Pricecutter Store, doing janitorial work. (Tr. 160).  Prior to the alleged onset date, Plaintiff was seen at the Good Samaritan Clinic and Sparks Regional Medical Center for various ailments, and was diagnosed at different times with a history of COPD, elevated blood pressure, tobacco abuse, hypertension, hypertriglycerides, left shoulder arthritis, bronchitis, dyslipidemia, asthma/COPD, cellulitis on his left foot, dizziness, and elevated liver enzymes. (Tr. 361, 385-391, 399).  Subsequent to the onset date, on October 5, 2011, Plaintiff was seen at Eastern Oklahoma Medical Center for an injured right knee. (Tr. 439). X-rays of the knee revealed a small suprapatellar joint effusion in an otherwise unremarkable right knee radiograph. (Tr. 439).  On January 11, 2012, Plaintiff presented himself to Sparks Regional Medical Center complaining of wheezing and shortness of breath as well as weakness in his right knee. (Tr. 405). Plaintiff was diagnosed with COPD and sprained right knee. (Tr. 407). X-rays of Plaintiff's chest revealed no significant radiographic abnormalities. (Tr. 411). Plaintiff's lungs were clear, cardiac silhouette was within normal limits, and there was no pleural effusion. (Tr. 411).

On February 8, 2012, Dr. Chester Lawrence Carlson conducted a General Physical

-3-

Examination. (Tr. 289-293). Upon examination, Dr. Carlson reported that all of Plaintiff's motions seemed painful and labored. (Tr. 291). However, Dr. Carlson also reported it was difficult to tell if Plaintiff's pain was genuine or put on, as the pain was out of proportion to the examination. (Tr. 291). All of Plaintiff's ranges of motion were within normal limits. (Tr. 291). There was no muscle atrophy and Plaintiff had a normal gait/coordination. (Tr. 292). Plaintiff had difficulty with balance, and he could perform all limb functions except when he squatted/arose from a squatting position, he had to hold hard to get back up. (Tr. 292). Plaintiff was reported as having 100% grip in both hands. (Tr. 292). Dr. Carlson interpreted the x-ray of Plaintiff's right knee as "normal." (Tr. 293). He diagnosed Plaintiff with COPD by history, multiple musculoskeletal pain secondary unknown etiology, and anxiety/depression by history. (Tr. 293). Dr. Carlson found that Plaintiff had mild limitation of bending, squatting due to musculoskeletal pain and moderate limitation in exercise tolerance secondary to dyspnea/COPD. (Tr. 293).

On February 16, 2012, a Physical RFC Assessment was completed by non-examining consultant, Dr. Valeria Malak. (Tr. 301-308). Dr. Malak found that Plaintiff was capable of performing light work, with certain postural and environmental limitations. (Tr. 302-305). In making this determination, she considered, inter alia, Plaintiff's COPD, lumbago, and Plaintiff's mild obesity. (Tr. 308).

On February 27, 2012, a Mental Diagnostic Evaluation was performed by Kathleen M. Kralik, Ph.D. (Tr. 310-317).  In her evaluation, Dr. Kralik noted that Plaintiff had a felony record, and Plaintiff acknowledged that this record kept him from getting some types of lighter duty jobs he could likely do despite his allegations. (Tr. 310). Plaintiff reported that he was at

-4-

that time working part time doing light janitorial work, cleaning floors at a Pricecutter store. (Tr. 310).  Although Plaintiff alleged problems with distractibility, attention and concentration, and hypothesized that perhaps this was because of his breathing problems, Dr. Kralik noted that as the session progressed, he revealed having had longstanding problems with attention, concentration and distractibility that had caused some problems with his functionality dating back to his school years. (Tr. 310-311).  Dr. Kralik reported that Plaintiff's dependency on others to take care of and provide for him persisted:  a female friend assisted him with household chores; the church they attended also was giving him financial assistance; and his church helped him with rent, food, and obtaining a vehicle. (Tr. 311).  Dr. Kralik noted that there was no evidence of psychosis, significant affective or anxiety issues, and that other than some evident ADHD issues with associated immaturity and parasitic-dependent tendencies, there was no significant cognitive or mental issues of a nature such as to preclude participation in gainful occupational endeavors. (Tr. 311).  Plaintiff reported to Dr. Kralik that he sometimes forgot to take his medications, and that his blood pressure increased when he forgot to take the medication. (Tr. 311).   Plaintiff told Dr. Kralik that he had signed on with a temporary employment agency. (Tr. 312).  He also told Dr. Kralik that he had quit smoking ten years prior. (Tr. 312).

Dr. Kralik found that Plaintiff was estimated to function in the low average to average range of intelligence. (Tr. 312). Dr. Kralik opined as follows:

> His antisocial inclinations, acknowledged longstanding parasitic-dependent tendencies, and logistical factors not relating to any of the alleged mental, cognitive or physical issues seem much more likely to be the reasons for his current part time employment status than any objective inability to participate in gainful occupational endeavors as defined by DDSSA, in examiner's perception.

-5-

(Tr. 315). She diagnosed Plaintiff as follows:

| | | |
|---|---|---|
| Axis I: | ADHD; combined type (Provisional) | |
| | Polysubstance dependence: allegedly in long term, sustained remission for multiple substances of abuse (methamphetamine and cannabis his drugs of choice); e.g. nicotine, LSD, mescaline, alcohol, primary care physician, ecstasy,etc; and fairly long term partial abstention from alcohol (with past binge drinking pattern). Psychological factors affecting medical condition: maladaptive health behaviors (sedentary lifestyle and psychosomatic preoccupations). (Rule out malingering/exaggeration of physical symptoms for secondary gain purposes; this likely a chronic issue) | |
| Axis II: | Diagnosis on Axis II deferred: (At minimum, antisocial and parasitic-dependent personality and behavioral patterns; some passive-aggressive inclinations described also.) | |
| Axis V: | Estimated Current GAF: | 55-65 |
| | Estimated. Highest GAF past year: | 65-75 |
| | Estimated Typical GAF past year: | 60-70 |

(Tr. 315).  Dr. Kralik concluded that Plaintiff's ability to attend and sustain concentration on basic tasks seemed mildly to moderately impaired for occupational purposes; his capacity to sustain persistence in completing tasks seemed moderately impaired for occupational purposes; and his capacity to complete work-like tasks within an acceptable time frame seemed moderately impaired for occupational purposes. (Tr. 316). She also reported that malingering/exaggeration of the nature and severity of physical issues as impacting occupational functionality (and his functionality otherwise) seemed likely. (Tr. 317). She concluded that the symptoms Plaintiff experiences were likely much more within normal limits relative to age peers than he seems to be acknowledging overtly. (Tr. 317).

On March 7, 2012, non-examining consultant Susan Daugherty, Ph.D., completed a Mental RFC Assessment form and a Psychiatric Review Technique Form. (Tr. 320-336). Dr. Daugherty concluded that Plaintiff was able to perform work where interpersonal contact was

incidental to work performed, e.g. assembly work; complexity of tasks was learned and performed by rote, with few variables, little judgment, and where supervision required was simple, direct and concrete (unskilled). (Tr. 323). She also found that Plaintiff had a mild degree of limitation in restriction of activities of daily living and a moderate degree of limitation in difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. (Tr. 334).

On April 16, 2012, Plaintiff presented to Good Samaritan Clinic, to re-establish care, reporting that he had been out of blood pressure medication for several months. (Tr. 318). On July 25, 2012, Plaintiff presented to Good Samaritan Clinic, and was assessed with Plantar fasciitis - arch support shoes were advised; Hepatitis C; HTN; and COPD. (Tr. 416).

On September 11, 2012, Plaintiff presented himself to Mercy Hospital in Fort Smith, Arkansas, complaining of flank pain. (Tr. 423). He also complained of cough and wheezing. (Tr. 424). It was noted that he was positive for myalgias, back pain and arthralgias and foot pain. (Tr. 424). Plaintiff was diagnosed with COPD and hepatitis. (Tr. 3424). Plaintiff was found to have normal range of motion and exhibited tenderness to the lower back - right more than left. (Tr. 426). He had a normal mood and affect, his behavior was normal, and his judgment and thought content was normal. (Tr. 426). A chest x-ray revealed no roentgenographic evidence of acute cardiopulmonary disease. (Tr. 430).

By October 3, 2012, when Plaintiff was seen at Good Samaritan Clinic, he was assessed with resolved bronchitis. (Tr. 413).

## III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by

AO72A
(Rev. 8/82)

substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial

-8-

gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**IV.    Discussion:**

Plaintiff raises the following arguments on appeal: 1) The ALJ failed to develop the record as to Plaintiff's RFC; 2) The ALJ improperly discounted Plaintiff's subjective claims of pain; 3)The ALJ erred as it relates to his assessment of credibility; and 4) The ALJ erred as it relates to his findings of severe impairments. (Doc. 16).

**A.    RFC Determination:**

As stated earlier, the ALJ found that between October 1, 2011, and April 22, 2013, Plaintiff would be able to perform light work with certain postural and environmental limitations (avoid concentrated exposure to pulmonary irritants). (Tr. 14-20). Plaintiff argues that an accurate RFC would have included Plaintiff's breathing limitations or some explanation as to why there is no objective medical to support restrictions to excessive cold, heat or humidity. Plaintiff also argues that the RFC did not adequately account for his obesity.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical

AO72A
(Rev. 8/82)

records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

With respect to Plaintiff's argument that the ALJ failed to include limitations relating to extreme heat and cold and humidity in his RFC, arguments made by Defendant on this issue are certainly persuasive, i.e. that the restriction from concentrated exposure to "pulmonary irritants" includes temperature extremes and humidity; that there is a lack of treatment records for COPD or breathing issues from the onset date until January 2012; and that chest x-rays performed revealed no significant radiographic abnormalities. More importantly, a review of all of the jobs listed that the ALJ found Plaintiff could perform during the relevant time period reveals that none of them involve exposure to weather, extreme cold, extreme heat, or humidity. Accordingly, Plaintiff's argument on this issue is without merit.

Regarding Plaintiff's obesity, the Court notes that in her Physical RFC Assessment completed by Dr. Malak, to which the ALJ gave substantial weight, she concluded that owing to Plaintiff's COPD, and lumbago, along with longitudinal history of treatment sought and given,

-10-

"and considering mild obesity,..." the medical records would support a light RFC with postural and environmental restrictions. (Tr. 308). The ALJ gave substantial weight to the opinions of the Plaintiff's treating physicians as well as the opinions of the examining and non-examining consultative physicians, finding them to be consistent with each other and the record as a whole. (Tr. 20).

Based upon the foregoing, as well as those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's RFC determination.

### B.   Credibility Findings:

As Plaintiff raises issues relating to the ALJ's credibility findings in his second and third arguments, the Court will combine its response on these issues.

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

The ALJ acknowledged Plaintiff alleged he suffered from pain in his back, knees, and feet. (Tr. 15). However, the ALJ also found that the objective medical evidence did not support

-11-

the severity of the pain and limitations alleged. (Tr. 16). The ALJ also set forth several reasons to support this conclusion. (Tr. 16-17). For example, the ALJ noted the conservative treatment recommended for Plaintiff's foot pain, Plaintiff's sporadic compliance with recommendations of his treating providers, Dr. Carlson's findings contained in the General Physical Examination, x-rays of Plaintiff's knee, and Plaintiff's daily activities. (Tr. 16-17). The lack of treatment and noncompliance with prescribed treatment are appropriate factors that weigh against credibility. See Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005); Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003); Hensley v. Barnhart, 352 F.3d 353, 357 (8th Cir. 2003).

Based upon the foregoing, the Court believes there is sufficient evidence to support the ALJ's credibility findings.

### C.     Severe Impairments:

An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. § § 404.1521, 416.921.  The Supreme Court has adopted a "de minimis standard" with regard to the severity standard.  Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

Plaintiff argues that the ALJ should have included Plaintiff's knee disorder and obesity as severe impairments. As noted by Defendant, the ALJ considered Plaintiff's right knee pain, the x-ray findings, Dr. Carlson's conclusions, and Plaintiff's daily activities. In addition, the ALJ took Plaintiff's knee pain allegations into consideration by limiting Plaintiff to light work with

AO72A
(Rev. 8/82)

certain postural limitations. (Tr. 17).

With respect to Plaintiff's obesity, there is nothing in the record to indicate Plaintiff's alleged obesity resulted in any functional limitations. In addition, Plaintiff did not list obesity as a condition that limited his ability to work, which is significant. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001)(failure to allege disabling mental impairment in application is significant, even if evidence of depression is later developed).

Based upon the foregoing, as well as those reasons given in Defendant's well-stated brief, the Court believes there is substantial evidence to support the ALJ's determination of severe impairments.

## V.    Conclusion:

Accordingly, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 23rd day of June, 2014.

/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-13-